# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Civil Action No. 12–cv–02531–REB–MEH

ESTATE OF JIMMA PAL REAT,
JAMES PAL REAT,
REBECCA AWOK DIAG,
RAN PAL,
CHANGKUOTH PAL,
JOSEPH KOLONG,

      Plaintiff,

v.

JUAN JESUS RODRIGUEZ, individually, and
CITY AND COUNTY OF DENVER,

      Defendants.

---

## ORDER RE: RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

---

**Blackburn, J.**

      This matters before me are (1) the **Recommendation of United States Magistrate Judge** [#92],[1] filed April 09, 2013; (2) **Plaintiffs' Partial Objection to Recommendation of United States Magistrate Judge Dated April 9, 2013 [Document 92]** [#94], filed April 22, 2013; (3) defendant the City and County of Denver's **Objection in Part to Recommendation of United States Magistrate Judge [Docket No. 92]** [#96], filed April 23, 2013; (4) **Defendant Rodriguez's Objection in Part to United States Magistrate Judge's Recommendation** [#97], filed April 23, 2013; and (5) **Plaintiffs' Request for Hearing and Oral Argument on the Parties'**

---

[1] "[#92]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  I use this convention throughout this order.

**Objections to Magistrate Recommendations** [#108], filed May 23, 2013.  I find that oral argument would not materially assist the court in resolving the issues inherent to the substantive motions, and therefore deny plaintiffs' request for same.  Having reviewed *de novo* all portions of the recommendation to which objections have been filed, as required by 28 U.S.C. § 636(b), and having considered carefully the recommendation, objections, and applicable caselaw, I adopt the magistrate judge's recommendation in part and respectfully reject it in part as set forth more fully herein.

The magistrate judge recommends that plaintiffs' federal due process and equal protection claims be dismissed for failure to adequately allege plausible constitutional violations.  With respect to the latter, I agree, although not for the reasons stated by the magistrate judge.  However, contrary to the magistrate judge's interpretation, I find and conclude that the First Amended Complaint contains allegations sufficient to plausibly suggest that Mr. Rodriguez knew that plaintiffs were African-American.  ***See Phelps v. Wichita Eagle-Beacon****, 886 F.2d 1262, 1269 (10th Cir. 1989) (to state equal protection claim, plaintiffs must allege that defendant was motivated by racial animus).[2] Nevertheless, it fails to assert any plausible facts (as opposed to conclusory legal allegations) to suggest that plaintiffs were treated differently from other 911 callers because of their race.  ***Watson v. City of Kansas City, Kansas***, 857 F.2d 690, 696 (10th Cir. 1988).  I therefore find and conclude that both Mr. Rodriguez and the City are entitled to dismissal of this claim.

I disagree, however, with the magistrate judge's recommendation that plaintiffs' substantive due process claim be dismissed for failure to allege facts sufficient to

---

[2] The magistrate judge concluded to the contrary.  However, the First Amended Complaint alleges that the caller, plaintiff Ran Pal, speaks with a distinct accent that positively identifies him as African.  Although the magistrate judge noted that Ran Pal's name, phonetically, is not distinctively African (and apparently sounds like "Rand Paul"), Mr. Rodriguez asked Pal to spell  his name, which he did.

plausibly suggest that defendant Rodriguez's actions are sufficiently shocking to the conscience to state a claim under the "state-created danger" test.[3]  *See Gray v. University of Colorado Hospital Authority*, 672 F.3d 909, 921 (10th Cir. 2012). Admittedly, this standard sets a lofty bar, "requir[ing] a high level of outrageousness." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995), *cert. denied*, 116 S.Ct. 924 (1996). Nevertheless, reviewing the allegations of the First Amended Complaint, and cognizant of the appropriate standard of review applicable to motions under Fed. R. Civ. P. 12(b)(6),[4] I must agree with plaintiffs that they have plausibly asserted a claim for violation of their rights to substantive due process under this theory of liability.

---

[3]  The magistrate judge also concluded that plaintiffs failed to allege a plausible claim for violation of their substantive due process rights under the "special relationship" theory of liability.  I agree with the magistrate judge's conclusion that the facts alleged in the First Amended Complaint do not set forth a plausible claim that Mr. Rodriguez restrained plaintiffs' liberty in a manner that would invoke this theory of liability.  *See Armijo v. Wagon Mound Public School*, 159 F.3d 1253, 1261 (10th Cir. 1998).  *See also Gray* 672 F.3d at 924 (special relationship requires proof of "state action involving force, the threat of force, or a show of authority, with the intent of exercising dominion and control over the person").  *See also Thornton v. City of Pittsburgh*, 777 F.Supp.2d 946, 953-54 (W.D. Pa. 2011); *Ireland v. Jefferson County Sheriff's Department*, 193 F.Supp.2d 1201, 1217-18 (D. Colo. 2002); *Park v. City of Atlanta*, 938 F.Supp. 836, 842-43 (N.D. Ga. 1996), *rev'd on other grounds*, 120 F.3d 1157 (11th Cir. 1997).  The motion to dismiss on this basis therefore will be granted.

[4]  Pursuant to the dictates of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007), I review the complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1974).  Although I must accept all well-pleaded factual allegations of the complaint as true, *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002), mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not be sufficient to defeat a motion to dismiss, *Ashcroft v. Iqbal*, 556 U.S. 662, – , 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations and internal quotation marks omitted).  To meet the plausibility standard, the complaint must suggest "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949.  For this reason, the complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Kansas Penn Gaming v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 127 S.Ct. at 1965).

   The nature and specificity of the allegations required to state a plausible claim will vary based on context and will "require[] the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950; *see also Kansas Penn Gaming*, 656 F.3d at 1215.  Nevertheless, the standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 127 S.Ct. at 1965) (internal quotation marks omitted).

As the magistrate judge noted, courts generally apply a standard akin to deliberate indifference in determining whether a particular course of conduct was conscience shocking. *See County of Sacramento v. Lewis*, 523 U.S. 833, 850, 118 S.Ct. 1708, 1718, 140 L.Ed.2d 1043 (1998). Yet the Supreme Court has cautioned that this standard is fluid and fact-specific and that "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another." *Id.* In particular, "[a]s the very term 'deliberate indifference' implies, the standard is sensibly employed only when actual deliberation is practical." *Id.* Therefore, when officials act in emergent and rapidly developing circumstances, the level of indifference necessary to shock the conscience is concomitantly higher:

> In hyperpressurized environments, an intent to cause harm is usually required. In cases, however, where deliberation is possible and officials have the time to make unhurried judgments, deliberate indifference is sufficient to show conscience shocking behavior. In between these two extremes, there are cases in which a state actor is confronted with making something less urgent than a split-second decision but more urgent than an unhurried judgment. In such circumstances where a state actor must act with hurried deliberation to reach a decision in a matter of hours or minutes, a plaintiff must show that a defendant consciously disregarded a great risk of harm.

*Hoover v. Beard*, 248 Fed. Appx. 393, 395 (3rd Cir. Sept. 21, 2007) (citations and internal quotation marks omitted). *See also Schnurr v. Board of County Commissioners of Jefferson County*, 189 F.Supp.2d 1105, 1130 (D. Colo 2001).

Although noting that the 911 call lasted some 11 minutes before the shooting occurred, the magistrate judge focused on the last three minutes of that critical period – after Mr. Rodriguez learned that the assailants had brandished a gun during the initial attack. The magistrate judge concluded that this period of time was so brief and so chaotic that Mr. Rodriguez did not have adequate time to deliberate. He thus found that

Mr. Rodriguez's conduct did not meet the high level of outrageousness needed to state a claim where emergent circumstances exist.

I find no principled reason to artificially cabin Mr. Rodriguez's conduct in this manner in determining whether plaintiffs have stated a viable claim for relief.  As set forth more fully below, Mr. Rodriguez's actions during the first eight minutes of the call allegedly created the circumstances which culminated in the subsequent tragedy.  It cannot be the law that a state actor is entitled to the benefit of the heightened state of mind standard when he himself allegedly set in motion the series of events giving rise to the emergency.

Moreover, the facts alleged in the First Amended Complaint – illuminated by the transcript of the 911 call appended thereto and the disciplinary report referenced therein – plausibly suggest that Mr. Rodriguez did not subjectively believe that he was dealing with an emergency situation at any point during the call.  *See Terrell v. Larson*, 396 F.3d 975, 980 (8th Cir. 2005) (key consideration in this context is defendant's subjective intent, i.e., "whether [he] subjectively believed that [he was] responding to an emergency.").  *See also Burgin v. Leach*, 2012 WL 5906658 at *5 (N.D. Okla. Nov. 26, 2012).  The very fact that Mr. Rodriguez did not dispatch a police officer to plaintiffs' location until *after* shots were fired supports a plausible inference that he perceived no emergency prior to that time.

Given the facts alleged in the First Amended Complaint, I find that the intermediate standard referenced above – whether Mr. Rodriguez "consciously disregarded a great risk of harm" – is the appropriate one by which to measure Mr. Rodriguez's conduct.  *Hoover*, 248 Fed. Appx. at 395.  These facts are sufficient to plausibly assert that this standard is met.  Plaintiffs assert that Mr. Rodriguez knew that

plaintiffs had been assaulted at 10th Avenue and Sheridan Boulevard and that the attack was serious enough to have shattered the car's window.  In his disciplinary report, Mr. Rodriguez acknowledged that he knew plaintiffs did not need to return to Denver in order to file a police report.  Nevertheless, he sent them from their location of relative safety in Lakewood back south along Sheridan into Denver, despite having been informed that the assailants were headed northbound on Sheridan immediately after the attack.  It is thus plausible to conclude from these allegations that Mr. Rodriguez's directions created a substantial risk that plaintiffs would re-encounter their attackers.[5]

The facts also plausibly suggest that Mr. Rodriguez consciously disregarded this risk.  After directing plaintiffs to park in a conspicuous location on a major road on which he knew the attackers had been traveling just minutes before, Mr. Rodriguez then instructed plaintiffs to activate their hazard lights, making them even more visible and obvious than they already were at that early hour of the morning.  He then learned that the attackers had brandished a gun during the initial altercation.  Despite this knowledge, Mr. Rodriguez did not suggest that plaintiffs find a more discrete location, even within the city of Denver, or otherwise make their whereabouts less obvious.  Most egregiously, Mr. Rodriguez did not dispatch a police officer to plaintiffs' location at any time until after Jimma Pal had been fatally shot.

I find and conclude that these factual allegations, accepted as true, are sufficiently shocking to the conscience to state a plausible claim for violation of plaintiffs' substantive due process rights under the state-created-danger theory.  My inquiry therefore must proceed to consider whether the unconstitutionality of that conduct was clearly established at the time of the underlying events.  ***See Novitsky v. City of***

---

[5]  Indeed, Mr. Rodriguez acknowledged during the call that the assailants might return.

*Aurora*, 491 F.3d 1244, 1255–56 (10th Cir. 2007). I find that it was.

Mr. Rodriguez argues that there is no Tenth Circuit case suggesting liability under the particular facts of this case. His argument is too facile, however. "The law is clearly established either if courts have previously ruled that materially similar conduct was unconstitutional, or if a general constitutional rule already identified in the decisional law [applies] with obvious clarity to the specific conduct at issue." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1290 (10th Cir. 2008) (quoting *United States v. Lanier*, 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (internal quotation marks omitted; alteration in original)). *See also Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) ("The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.") (citation and internal quotation marks omitted). In fact, the viability of the danger creation theory of substantive due process liability has been clearly established in this Circuit for many years. *See Kuyper v. Board of County Commissioners of Weld County*, 2010 WL 1287534 at *9 (D. Colo. March 30, 2010). Thus, the relevant question for present purposes is whether "a reasonable state official would have known [at the time of the events in question] that reckless, conscience shocking conduct that altered the status quo and placed a [plaintiff] at substantial risk of serious, immediate, and proximate harm was unconstitutional." *Currier v. Doran*, 242 F.3d 905, 924 (10th Cir.), *cert. denied*, 122 S.Ct. 543 (2001).

Based on the facts alleged in the First Amended Complaint, I find that this standard is met here. Through his affirmative acts, Mr. Rodriguez sent plaintiffs from a position of relative safety back into the zone of danger from which they had escaped

just minutes before.  Aware that the assailants had been headed northbound on Sheridan Boulevard after the initial attack, Mr. Rodriguez instructed plaintiffs to stop their car at a major intersection less than 20 blocks north and make themselves even more conspicuous at a time of night when there was unlikely to be much other traffic on the road in any event.  Most glaringly, knowing that the driver was injured and that the assailants had a gun, he failed to send help to the scene until after the tragedy was *fait accompli*.  Although qualified immunity provides "ample room for mistaken judgments," ***Malley v. Briggs***, 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986), I cannot say that "reasonable officials in the same situation as the defendant[] could disagree on the appropriate course of action to follow," ***Whitington v. Lawson***, 2009 WL 3497791 at *3 (D. Colo. Oct. 29, 2009), ***aff'd***, 424 Fed. Appx 777 (10th Cir. June 1, 2011).  I therefore reject the magistrate's judge's recommendation as to this aspect of plaintiffs' substantive due process claim and thus will deny Mr. Rodriguez's motion to dismiss that claim.[6]

Having found that plaintiffs failed to plead a constitutional injury, the magistrate judge recommended that plaintiffs' second cause of action against the City of Denver be dismissed.  ***See Wilson v. Meeks***, 98 F.3d 1247, 1255 (10th Cir. 1996) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").  Because I have found otherwise, I must consider the City's other substantive arguments.  ***See Moss v. Kopp***, 559 F.3d 1155, 1169 (10th Cir. 2009) (municipality cannot be held liable based merely on underlying constitutional violation by one of its officers); ***see also Brown v. Montoya***, 662 F.3d 1152, 1164 (10th Cir. 2011)

---

[6] Concomitantly, I agree with that portion of the magistrate judge's recommendation suggesting the plaintiffs have pled facts sufficient to suggest that Mr. Rodriguez's conduct was willful and wanton, thus denying him the protections of the Colorado Governmental Immunity Act.  His motion to dismiss the state law claims therefore will be denied.

("Section 1983 does not authorize liability under a theory of *respondeat superior.*").

Plaintiffs assert that the First Amended Complaint states a viable claim under 42 U.S.C. § 1983 against the City for failure to train and supervise Mr. Rodriguez. Specifically, they allege that the City maintains a

> longstanding widespread deliberately indifferent dangerous custom, habit, practice and/or policy for emergency communications operators to refuse to timely dispatch units where the victims are safely located, and instead direct them to go back into city limits in the proximity of where the attackers were known to have just been, or even instruct the callers to remain at scenes known to have involved crimes against persons[.]"

(**First Am. Compl.** ¶ 169 at 31 [#59], filed December 21, 2012.)  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." ***Connick v. Thompson***, – U.S. –, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011).  In this context, plaintiffs must allege facts sufficient to suggest that the failure to train "amounts to deliberate indifference to the rights of persons with whom the police come into contact."  ***City of Canton, Ohio v. Harris***, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989).  Deliberate indifference is established only "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." ***Connick***, 131 S.Ct. at 1360.

Plaintiffs allege that the allegedly unconstitutional practice of the city has been in effect since "at least the 1980s" and point to three incidents in which 911 callers who had been attacked were told to return to the city limits in order to file a police report. (**First Am. Compl.** ¶¶ 99 -105 at 18-19.)  ***See Connick***, 131 S.Ct. at 1360 ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.") (internal citation

and quotation marks omitted).  To the extent that three incidents spread over a period of 20 or more years can be said to constitute a "pattern," I am unpersuaded that these incidents sufficiently allege the existence of a policy or custom such as plaintiffs suggest.  In two of these incidents, although the callers allegedly were instructed to return to Denver, there is no allegation that they were specifically told to return to the scene of the attack or otherwise reenter the zone of danger.[7]  In the third – a 2011 incident in which a woman reported a road range incident and protested after being told to pull over immediately to await police officers – there is no allegation suggesting that the 911 operator's directive was intended to require the caller to remain within the city limits.

This leaves plaintiffs to rely exclusively on their allegations regarding Mr. Rodriguez's own deficiencies as a 911 operator.  In addition to Mr. Rodriguez's shortcomings in connection with the events underlying this case, plaintiffs allege that Mr. Rodriguez exhibited similar deficiencies in performance in relation to an incident in February 2012.  In that instance, although the caller reported that he had just choked his mother's boyfriend to death, Mr. Rodriguez failed to appreciate the seriousness of the situation, asking largely irrelevant questions and failing to queue the call for over five minutes.  In addition, after directing the caller to leave the house to confirm the street address, Mr. Rodriguez then directed him to return to the house to perform CPR on the victim, without any appreciation of the potential for further violence.  Mr. Rodriguez received a verbal reprimand in connection with this incident.  (**First Am. Compl. ¶¶ 114-126 at 20-22.**)

---

[7]  For similar reasons, the allegation that a former Denver 911 dispatch trainer "has publicly stated that callers who are outside the city "are routinely told to go back to Denver" does not speak with sufficient specificity to the allegation that callers are told to return to city limits regardless of the danger doing so might present.  (*See* **First Am. Compl.** ¶ 106 at 19.)

Accepting these allegations as true, I do not believe they sufficiently plead a claim that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." **City of Canton**, 109 S.Ct. at 1205.  For one thing, the fact that Mr. Rodriguez was reprimanded for his conduct in connection with the February 2012, call supports the inference that the City's official policy was contrary to that which plaintiffs allege.  Moreover, the fact that he was reprimanded implies that he was counseled and thus aware that it was *not* the policy of the City of Denver to require 911 callers to return to the scene of the crime in order to give a report.  "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id*. at 1206.

Moreover, nothing alleged in the First Amended Complaint comes close to suggesting that the need for more or better training was obvious in light of Mr. Rodriguez's past lapses.  There is no allegation or other indication that the February 2012, incident actually resulted in a violation of anyone's constitutional rights.  Without such an allegation, the fact that Mr. Rodriguez – or any other 911 operator – sent a caller back into the City of Denver or back to the vicinity of the crime is irrelevant in terms of the deliberate indifference inquiry.  A constitutional violation in the air does not make out a viable allegation of deliberate indifference.  City officials could not have had actual or constructive notice that such incidents were likely to violate the constitutional rights of 911 callers.[8]  *See Ross v. Town of Austin, Indiana*, 343 F.3d 915, 918 (7th

---

[8] Nor are the factual circumstances of the two calls implicating Mr. Rodriguez, although certainly reflecting poorly on his judgment in general, sufficiently similar to assert a plausible claim that the City of Denver was deliberately indifferent for failure to train.

Cir. 2003) ("[Section] 1983 imposes upon municipalities no constitutional duty to provide law enforcement officers with advanced, specialized training based upon a general history of criminal activity in the community. . . . [D]eliberate indifference does not equate with a lack of strategic prescience.").  Plaintiffs' claim against the City therefore is properly dismissed.

> **THEREFORE, IT IS ORDERED** as follows:

> 1.  That the **Recommendation of United States Magistrate Judge** [#92], filed April 9, 2013, is **ADOPTED IN PART** and respectfully **REJECTED IN PART** as follows:

>> a.  That the recommendation is **REJECTED** insofar as it recommends dismissing plaintiffs' substantive due process claims against Mr. Rodriguez under the state-created-danger theory;

>> b.  That the recommendation is **REJECTED** also to the extent it recommends that plaintiffs' claims against the City and County of Denver should be dismissed for failure to prove an underlying constitutional violation based on the alleged violation of plaintiffs' rights of substantive due process under a danger creation theory; and

>> c.  That in all other respects, the recommendation is **APPROVED AND ADOPTED** as an order of this court;

> 2.  That **Plaintiffs' Request for Hearing and Oral Argument on the Parties' Objections to Magistrate Recommendations** [#108], filed May 23, 2013, is **DENIED**;

> 3.  That **Plaintiffs' Partial Objection to Recommendation of United States Magistrate Judge Dated April 9, 2013 [Document 92]** [#94], filed April 22, 2013, is **SUSTAINED IN PART** and **OVERRULED IN PART**, as follows:

>> a.  That the objection is **SUSTAINED** insofar as it is directed to the

magistrate judge's recommendation that plaintiffs' substantive due process claim against Mr. Rodriguez under the danger creation theory be dismissed; and

    b.  That in all other respects, the objection is **OVERRULED**;

4.  That the objections stated by the defendant, the City and County of Denver, in its **Objection in Part to Recommendation of United States Magistrate Judge [Docket No. 92]** [#96], filed April 23, 2013, are **OVERRULED**;

5.  That the objections stated in **Defendant Rodriguez's Objection in Part to United States Magistrate Judge's Recommendation** [#97], filed April 23, 2013, are **OVERRULED**;

6.  That defendant Rodriguez's **Motion To Dismiss Substituted Amended Complaint** [#66], filed January 2, 2013, is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.  That the motion is **GRANTED** with respect to plaintiffs' substantive due process claim insofar as that claim is based on the allegation of a special relationship between plaintiffs and Mr. Rodriguez;

    b.  That the motion is **GRANTED** further with respect to plaintiffs' equal protection claim; and

    c.  That in all other respects, the motion is **DENIED**;

7.  That plaintiffs' claims for violation of their rights to equal protection and to substantive due process, insofar as that claim is based on the allegation of a special relationship between plaintiffs and Mr. Rodriguez, are **DISMISSED WITHOUT PREJUDICE**;

8.  That defendant the City and County of Denver's **Motion To Dismiss** [#62],

filed December 24, 2012, is **GRANTED**;

     9.  That the claims of the plaintiffs against the City and County of Denver are

**DISMISSED WITHOUT PREJUDICE**;

     10.  That at the time judgment enters, judgment **SHALL ENTER** as follows:

     a.  On behalf of defendant, Juan Jesus Rodriguez, individually, against plaintiffs, Estate of Jimma Pal Reat; James Pal Reat; Rebecca Awok Diag; Ran Pal, Changkuoth Pal; and Joseph Kolong, as to plaintiffs' claims for violation of their rights to equal protection and to substantive due process, insofar as that claim is based on the allegation of a special relationship between plaintiffs and Mr. Rodriguez; provided, that the judgment as to these claims shall be without prejudice; and

     b.  On behalf of defendant, The City and County of Denver, against plaintiffs, Estate of Jimma Pal Reat; James Pal Reat; Rebecca Awok Diag; Ran Pal, Changkuoth Pal; and Joseph Kolong, as to plaintiffs' claims against the City; provided, that the judgment as to this claim shall be without prejudice; and

     11.  That defendant, the City and County of Denver, is **DROPPED** as a named party to this action, and the case caption **AMENDED** accordingly.

     Dated June 17, 2013, at Denver, Colorado.

                       **BY THE COURT:**

                       Robert E. Blackburn
                       United States District Judge